Katherine RANN; Lawrence Rann; Sue Brown; Kenneth Brown; Judith Brown; Leland Brown; Ruth Strand; Gordon Strand; and Mary Brown, Plaintiffs-Appellants,

v.

W.P. McINNIS, M.D.; Victoria Hospital; and St. Joseph Hospital, Defendants-Appellees.

No. 85–1369.

United States Court of Appeals, Sixth Circuit.

Argued March 3, 1986.

Decided April 25, 1986.

---

Geoffrey N. Fieger, Fieger and Fieger, P.C., Southfield, Mich., Errol Shifman (argued), for plaintiffs-appellants.

Robert J. Riley, Cholette, Perkins & Buchanan, Grand Rapids, Mich., Robert Attmore (argued), for defendants-appellees.

Before MERRITT and WELLFORD, Circuit Judges, and WILHOIT,* District Judge.

MERRITT, Circuit Judge.

Plaintiffs, a mother and her children and daughters- and sons-in-law,[1] appeal the dismissal of their complaint in this medical malpractice action for want of *in personam* jurisdiction over the Canadian defendants under Michigan's long-arm jurisdiction statute. We affirm the judgment of District Judge Harvey that the defendants do not have the requisite contacts under Michigan law and are not subject to the jurisdiction of the courts of that state.

The complaint alleges that in 1974 Mrs. Mary Brown consulted with Dr. McInnis, a defendant, at Victoria Hospital. Dr. McInnis diagnosed her as suffering from Huntington's Chorea, a fatal hereditary disease. The offspring of a person with Huntington's Chorea normally experience a 50% mortality rate from the disease. After this diagnosis, Dr. McInnis consulted with Mrs. Brown's children in Ontario at St. Joseph's Hospital, also a defendant. He explained the disease to them. As a result of this consultation, Mrs. Brown's daughters and daughters-in-law, during the next five years, each underwent sterilization procedures in order to avoid having any more children and thereby passing on the disease. Each woman was sterilized in Michigan by a physician other than Dr. McInnis.

Subsequently, in 1983, plaintiffs learned that Dr. McInnis' diagnosis was in error. Mrs. Brown, according to the allegations, was in fact suffering from a non-hereditary illness caused by drug side effects.

Dr. McInnis is licensed to practice medicine by the Province of Ontario, and is a resident of London, Ontario. Neither Dr. McInnis nor either hospital does business in Michigan or anywhere else in the United States, nor do they advertise for patients in the U.S. None of the defendants own any property in the U.S.

The sole issue before this court is whether the Michigan long-arm statute may be the basis on which to predicate jurisdiction over the defendants.

Plaintiffs rely on M.C.L.A. § 600.705 (1970), M.S.A. § 27A.705 and M.C.L.A. § 600.715 (1970), M.S.A. § 27A.715. M.C.L.A. § 600.705 states in pertinent part:

Limited personal jurisdiction over individuals

Sec. 705. The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction....

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

M.C.L.A. § 600.715 states the same basis of jurisdiction over corporations.

Plaintiffs rely on Section (2) of 600.705 as the basis for asserting jurisdiction over Dr. McInnis and section (2) of 600.715 for asserting jurisdiction over the two hospital corporations. Specifically, they claim that Dr. McInnis' actions (*i.e.* his negligent diagnosis) caused the sterilizations to occur in Michigan. They argue that since Dr. McInnis knowingly chose to render services to Michigan residents, notions of fair play and substantial justice are not offended by an exercise of limited personal jurisdiction over him. Indeed, plaintiffs insist that Dr.

---

* The Honorable Henry R. Wilhoit, Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

1. Plaintiffs in this action are Katherine Rann, Lawrence Rann, Sue Brown, Kenneth Brown, Judith Brown, Leland Brown, Ruth Strand, Gordon Strand and Mary Brown. All are residents of Michigan, except for the Strands, who are Wisconsin residents. Mary Brown is the mother of Katherine Rann, Kenneth Brown, Leland Brown and Ruth Strand. The other plaintiffs are the spouses of Mary Brown's children.

McInnis' receipt of Michigan Blue Cross/Blue Shield payments and his "solicitation" of plaintiffs over the telephone satisfies the requirement of minimum contacts and justifies the exercise of Michigan's long-arm statute.

In *Woodward v. Keenan,* 88 Mich.App. 791, 279 N.W.2d 317 (1979), the Michigan Court of Appeals construed its long-arm statute in similar circumstances. It suggested that where out-of-state physicians did not "engage in any program designed to encourage Michigan residents" to make use of their services, they lacked "sufficient due process ties with this State to mak[e] them amenable to the jurisdiction of our courts...." 279 N.W.2d at 317.

In *Woodward,* as here, the Michigan plaintiff was referred to an out-of-state doctor,[2] whose misdiagnosis, it was alleged, caused tortious consequences to occur in Michigan. Additionally, the non-resident physician wrote a letter to plaintiff's physician wherein he set forth this misdiagnosis.

Here, plaintiffs claim that McInnis "solicited" Mrs. Brown's family members by a telephone call inviting them to come to Canada to discuss his diagnosis of Mrs. Brown. They also point out that, apparently, Dr. McInnis received payment for services rendered to Mrs. Brown from Michigan Blue Cross/Blue Shield. These two facts, they assert, provide the minimum contacts required under the *Woodward* case. We disagree. A Blue Cross check and a phone call which results in a free post-consultation discussion with a referred patient's family members does not amount to a regular "program" of the sort required in *Woodward.*

Plaintiffs direct our attention to *Cubbage v. Merchent,* 744 F.2d 665 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985), in which the Ninth Circuit held that a California court could properly assert jurisdiction over a non-resident

hospital and doctors. In *Cubbage,* however, the Arizona defendants had numerous contacts with California, including telephone directory listings and advertising, and California insurance reimbursement numbers, factors not present here.

In *Woodward,* the court stated the general policy underlying its long-arm statute in cases in which its citizens receive advice and information from advisors out of state:

> While we recognize the State's interest in providing a convenient forum for vindicating the rights of its injured residents, this interest cannot override Michigan's legitimate concern that its citizens obtain out-of-state professional care whenever it is needed or desired.

> \*　　\*　　\*　　\*　　\*　　\*

> "It is clear that when a client or a patient travels to receive professional services without having been solicited ... then the client ... ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly."

*Woodward v. Keenan,* 79 Mich.App. 543, 261 N.W.2d 80, 82, quoting *Gelineau v. N.Y.U. Hospital,* 375 F.Supp. 661, 667 (D.N.J.1974).

*International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), provides that when state long-arm jurisdiction is the alleged basis for the assertion of jurisdiction over a non-resident, due process is satisfied if the defendant has "sufficient contacts or ties with the state of the forum to make it reasonable and just" to require the non-resident to come in and defend. Although the *International Shoe* standard sets liberal boundaries for state long-arm jurisdiction under federal due process, due process does not compel states to reach the limits of those

---

**2.** Neither party in the instant case raised or briefed any issue based on the fact that defendants are foreign nationals. No issue is raised concerning the jurisdiction to adjudicate claims against a Canadian, and we express no opinion here about any other bars McInnis might raise

to the exercise of personal jurisdiction over him in a U.S. court. *See* Restatement (Second) of the Foreign Relations Law of the United States § 30 (1965); *id.* at § 421 [441](2)(j) (Tent.Draft No. 6, 1985).

boundaries. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Even though states such as Michigan may at times indicate that they intend their long-arm statute to reach the outermost limits allowed by due process, cases like *Woodward* indicate that the Michigan courts are, in fact, stopping short of that boundary. Our duty in this post-*Erie* [3] diversity case is to stop where the Michigan courts have drawn the line and not push jurisdiction to the limits of due process allowed by *International Shoe.* For, "... in diversity cases state law determines whether a [defendant] is subject to suit in the state, and the federal decisions are important only in ascertaining whether the state law is within constitutional bounds." C. Wright, The Law of Federal Courts § 64 at 420–21 (4th ed. 1983).

The judgment of the District Court is AFFIRMED.

**3.** *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).