**Joan Elena LANIER,**
**Plaintiff–Appellant,**

v.

**The AMERICAN BOARD OF ENDODONTICS and the American Association of Endodontists, a corporation, Defendants–Appellees.**

**No. 85–1645.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1986.

Decided March 31, 1988.

Rehearing and Rehearing En Banc

Denied June 14, 1988.

Michael L. Pitt (argued), Kelman, Loria, Downing, Schneider and Simpson, Detroit, Mich., for plaintiff-appellant.

William D. Snapp (argued), Jenner & Block, Chicago, Ill., for defendants-appellees.

Before KRUPANSKY and RYAN, Circuit Judges, and HULL,* District Judge.

RYAN, Circuit Judge.

This case concerns the application of the Michigan long-arm statute, Mich.Comp. Laws § 600.711 *et seq.*, to a transaction involving a Michigan dentist who sought and was denied certification by the American Board of Endodontics (Board), an Illinois corporation.

The dispositive question is whether, on the facts presented, the federal district court sitting in Michigan acquired limited personal jurisdiction over the defendant Board and its principal, the American Association of Endodontists (Association). The district court held it did not. We disagree, and reverse.

Plaintiff, Doctor Lanier, is licensed to practice dentistry in Michigan and specializes in endodontics, a dental specialty concerned with diseases of tooth pulp. She sought certification by the defendant Board by requesting that the Board send an application to her from its headquarters in Chicago, Illinois. Certification is a three-step process: a written examination, submission of a portfolio of case studies, and finally, an oral examination. Dr. Lanier completed the application and sent it to Chicago with the required fee. She later traveled to Chicago where she successfully passed the written portion of the examination. Her portfolio of case studies was sent to the defendants' Chicago headquarters and was approved. Dr. Lanier then went to Phoenix, Arizona where the oral examination was given. She failed the examination and was notified of that fact by mail.

After paying another application fee, Dr. Lanier went to Chicago where she again took the oral examination and failed.

Dr. Lanier then filed suit against the defendants in the state court in Michigan, alleging that her rejection by the Board

---

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennes-see, sitting by designation.

was a result of sex discrimination, in violation of the Michigan Elliott–Larsen Civil Rights Act, Mich.Comp. Laws § 37.2101 *et seq.* The defendants removed the case to the federal district court. Plaintiff challenged the removal petition as untimely and sought remand to the state court because of the diversity of citizenship of the parties. The plaintiff's challenge to the timeliness of the removal petition presents the first issue we are required to address.

### I.

28 U.S.C. § 1446(b) (1973) provides:

The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has been filed in court and is not required to be served on the defendant, whichever period is shorter.

Dr. Lanier's complaint, filed in the Michigan state court, was received by the Association in Chicago on September 27, 1984, but valid personal service of process was not completed until October 5. The Association filed its removal petition on November 2, 1984, which is more than "thirty days after the receipt by the defendant, through service *or otherwise,* of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ..." (emphasis added). The district court concluded, correctly we think, that defendants' removal petition was untimely. The court held, however, that Dr. Lanier had waived her right to challenge the untimeliness of the removal petition because she acted affirmatively to submit herself to the jurisdiction of the federal court. The court's waiver ruling derived from the following facts:

On November 15, a day less than two weeks after the defendants' removal petition was filed, counsel for the parties entered into an agreement by which the defendant Board would be permitted an extension of time in which to file a motion to dismiss and a memorandum in support thereof, and would supply answers to certain interrogatories submitted by the plaintiff concerning the question of personal jurisdiction.

On November 20, plaintiff's counsel filed with the district court a "notice to produce," demanding that defendants produce certain named documents, and a set of forty-two interrogatories directed to the defendant. Plaintiff's counsel attached a letter to the defendants' copy of the interrogatories which stated:

In researching the case on personal jurisdiction, ... I discovered that your removal petition was filed untimely ... I am in the process of preparing our motion to remand which should be filed in the next day or two.

On November 27, plaintiff filed a second lawsuit against the defendants, this time in the United States District Court, alleging essentially the same cause of action as was pleaded in the first case. However, in a letter dated November 30, plaintiff's counsel advised defendants' counsel that the second lawsuit was filed "by mistake" and was intended to be an amendment to the original cause of action. Subsequently, on the defendants' motion, uncontested by plaintiff, the cases were consolidated. On the same day, November 30, plaintiff filed her motion to remand the case to the state court. Plaintiff contends on appeal that the district court erred in holding that she had waived her right to challenge the defendant's removal petition as untimely.

■ It is settled that when a party undertakes affirmative action in the federal district court, she has acquiesced in the federal court's jurisdiction and waived objection to the removal. *See In re Moore,* 209 U.S. 490, 28 S.Ct. 706, 52 L.Ed. 904 (1908); *Harris v. Edward Hyman Co.,* 664 F.2d 943 (5th Cir.1981). Dr. Lanier agrees that the district court has discretion to determine whether she has waived any right to object to removal. She contends, however, that she did not unduly delay her motion for remand, pointing out that she moved for remand a mere eleven days after

having taken any *affirmative* action in the federal court. She argues that the activity she undertook in the federal court was defensive until after such time as she advised defendant that she intended to move to remand.

■ It is likewise settled that the district court has broad discretion in deciding whether a plaintiff has waived a right to object to procedural irregularities in removal proceedings. *See Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 6 (1st Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983); *Godman v. Sears, Roebuck & Co.,* 588 F.Supp. 121, 124 n. 3 (E.D.Mich.1984).

■ Here, before filing her motion to remand to the state court, plaintiff entered into stipulations, filed requests for discovery, sought to amend her complaint, filed a new lawsuit against the defendant in the federal court, demanded trial by jury, and proceeded with discovery. We are satisfied the district court did not abuse its broad discretion in determining that, by reason of her affirmative activity in the district court, the plaintiff waived any objection she may have had to the untimeliness of the defendants' removal petition.

## II.

■ We next address the dispositive question whether the district court erred in determining that it had no personal jurisdiction over the defendants. Plaintiff argues that the court acquired personal jurisdiction over the defendant under any of three provisions of Michigan's long-arm statute: (1) general jurisdiction, under Mich.Comp. Laws § 600.711; (2) limited personal jurisdiction of a corporation "transacting any business within the state," under Mich.Comp. Laws § 600.715(1); and (3) limited personal jurisdiction over a corporation which has caused "any act to be done, or consequence to occur, in the state resulting in an action for tort," under Mich.Comp. Laws § 600.715(2).

Because we conclude that the district court acquired limited personal jurisdiction under Mich.Comp. Laws § 600.715(1), the second of the three bases asserted by plaintiff, we need not determine whether general jurisdiction under § 600.711 or limited personal jurisdiction under § 600.715(2) exists.

Mich.Comp. Laws § 600.715(1) provides:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgment against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

Defendants argue that the Board's limited activities in the state of Michigan do not constitute a transaction of business. They also argue that even if its negligible contacts with Dr. Lanier in Michigan do constitute the transaction of "any business within the state," Dr. Lanier's cause of action did not arise out of those activities.

We disagree, and we do so as a result of a two-step analysis. First, we think the pleadings, affidavits, and related material considered by the trial court demonstrate that the Board must be said to have transacted some slight amount of business with Dr. Lanier in Michigan. Second, we are satisfied that the alleged act of sex discrimination of which she complains—failing her on the oral examination because she is a woman—arose out of the business transacted in Michigan.

### A.

The first statutory criterion for finding limited personal jurisdiction under the Michigan statute is "[t]he transaction of any business" in Michigan.

In *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623 (1971), the Michigan Supreme Court, in construing Mich.Comp. Laws § 600.715(1), stated:

The word "any" means just what it says. It includes "each" and "every".... It comprehends the "slightest".

*Id.*, at 199 n. 2, 188 N.W.2d 623. Thus, if defendant conducted even the slightest act of business in Michigan, the first statutory criterion for personal jurisdiction under section 600.715(1) is satisfied.

The Board's contacts in Michigan, insofar as they are pertinent to this case, related entirely to the process of considering Dr. Lanier's request for certification as a Diplomate of the American Board of Endodontics. While that process involved Board activity in Arizona, Illinois, and Michigan, our concern, in this first step of the analysis, is whether any part of the process included transacting "any business" in Michigan. The Board responded to Dr. Lanier's request for an application by mailing an application to her in Michigan advising her of the criteria for eligibility for board certification, including payment of the necessary application fees, the necessity of passing first a written and then an oral examination, and the requirement of the submission of case studies to be evaluated by Board officials. Later Board correspondence to Dr. Lanier in Michigan included advice that her case studies had been approved, that she had passed the written examination, and that she had not passed the oral examination. She was also invited to retake the oral examination and pay another examination fee for certification. In addition, phone calls were exchanged between Board officials in Chicago and Dr. Lanier in Michigan, in connection with her efforts to learn why she had not passed the oral portion of the certification examination. The contacts between Dr. Lanier and the Board looked to a contractual arrangement whereby the prestige of the Board's certification would be conferred upon Dr. Lanier in Michigan in consideration of her meeting the Board's criteria for certification eligibility, including the payment of the necessary fee and the presentation of the requisite professional credentials. Plainly, the Board's contacts with Dr. Lanier in Michigan were for purposes of establishing a business relationship, albeit of a professional nature. That the business

they conducted was for professional and not commercial purposes does not alter its character as a business relationship.

The Board was aware that Dr. Lanier was a practicing dentist in the state of Michigan, and a member of the American Association of Endodontics. In offering to consider Dr. Lanier's credentials for board certification and, if she qualified, to confer upon her the status of Diplomate, the Board's purpose was, at least in part, to affect the quality of dental care being provided to the public in Michigan by raising the standards for endodontic practice.

The Board's statement of Policy and Procedures begins with a statement by Dr. Harry Blechman, past President of the American Board of Endodontics, which includes the following:

The primary objective of the Board continues to be the protection of the public. The Board does this by raising the standards of endodontic practice through an examination process and by requiring candidates for Diplomate status to show strong evidence of specialized skills and knowledge in endodontics.

Similarly, in its published General Statement of Policy and Procedure, the Board states in part:

The American Board of Endodontics is sponsored by the American Association of Endodontists for the following reasons:

1. To meet an existing public need for recognition of those who have special knowledge and skill in the diagnosis and treatment of contiguous pulpal and periapical tissues.

2. To maintain standards of excellence in endodontic practice and determine the competence of applicants who serve the public through limitation of their practice.

Thus, it is at least one of the declared purposes of the American Board of Endodontics to influence the quality of dental care in Michigan by certifying to the general public that certain dental practitioners have been determined to have the requisite education, knowledge and professional

skills in endodontics that they may be relied upon by the public as highly skilled specialists. In addition, it is of no small importance to the Board that it continues to be recognized in Michigan, by Michigan dentists and the public, as the most prestigious national organization for identifying Michigan's most qualified endodontists.

It is manifest that the Board entered into a contract with Dr. Lanier to consider her qualifications and eligibility for Board certification. It is, of course, quite beside the point whether the application process, during which Dr. Lanier engaged in an exchange of correspondence and telephone calls with the defendant Board, resulted in the formation of a contract in Arizona, in Illinois, or in Michigan. The point is that the exchange of correspondence and telephone calls between them including particularly the defendants' activity in mailing the application for Board certification to Dr. Lanier in Michigan, advising her by mail of the requirements for board certification, accepting by mail from Michigan the required registration fees, advising Dr. Lanier of the time, date, and location of the written and oral examinations, sending letters to Michigan advising her that she had been rejected and inviting her to sit for a second oral examination, amounted collectively to the transaction of "any" business in Michigan. Neither the presence of the defendant in the state, nor actual contract formation need take place in the forum state for defendant to do business in that state. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the court held:

> Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an *inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail* and wire communications *across state lines,* thus obviating the need for physical presence within a State in which business is conducted. *So long as a com-mercial actor's efforts are "purposefully directed" toward residents of another State* [physical absence is not dispositive].

*Id.* at 476, 105 S.Ct. at 2184 (emphasis added).

In view of *Burger King*, defendants are clearly mistaken in asserting that phone calls and mailings cannot constitute "transacting business." Nonetheless, defendants cite several cases to support this position. However, each of the cases is distinguishable. In *Institutional Food Marketing Assocs., Ltd. v. Golden State Strawberries, Inc.,* 747 F.2d 448 (8th Cir.1984), plaintiffs sued defendants for declaratory and injunctive relief concerning a contract the parties allegedly entered into in California. Defendants only contacts with the forum state, Missouri, were phone conversations and letters demanding payment on the last shipment under the contract allegedly entered into in California. The court held these communications insufficient to satisfy the minimum contacts test. *Id.* at 456. But, in that case, the business had already been transacted, the communications to Missouri were for collection, not to transact business. In *Smith v. Piper Aircraft Corp.,* 425 F.2d 823 (5th Cir.1970), the court rejected plaintiff's contention that when plaintiff sent a letter seeking to sell defendant a plan for retractable landing gears, followed by defendant's letter of rejection, defendant transacted business. But in *Smith,* no business was ever transacted. Plainly that is not the case here. Defendants also cite *First Nat'l. Monetary Corp. v. Chesney,* 514 F.Supp. 649 (E.D. Mich.1980). *Chesney* actually held that defendants' mailings were sufficient to constitute "transacting business," but were not sufficiently extensive to create the foreseeability of defendant being haled into a Michigan court.

A Michigan appellate court decision recognizing that telephone and mail contact with a party in Michigan may amount to transacting business is *Kiefer v. May,* 46 Mich.App. 566, 208 N.W.2d 539 (1973), in which the court held that a defendant who advertised an antique automobile for sale

in a national publication that circulated in Michigan and who, by telephone, represented the auto to be almost complete and accepted defendant's money wired from Michigan, was subject to limited personal jurisdiction in Michigan. *See also McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190 (1st Cir.1980), regarding mailings as the basis for transacting "any business" in the forum state.

*Hahn v. Vermont Law School*, 698 F.2d 48 (1st Cir.1983), held squarely that defendant's sending an application to plaintiff in Massachusetts upon request, later sending an acceptance letter and accepting plaintiff's deposit of $100, constituted both the transaction of business and a contract formation. Jurisdiction was further justified because these business transactions were not an isolated incident, rather "they were part of VLS' efforts to serve the market for legal education in Massachusetts." *Id.* at 52. Similarly, the Association and the Board have declared that one of their primary purposes is to affect, on a continuing basis, the quality of dental care being provided to the public in Michigan. To that end the Association communicates regularly with its Michigan members, offering professional advice through articles in the *Journal of Endodontics*, providing information concerning seminars and conferences, and establishing a forum for the exchange of professional information. In addition, the Board communicates regularly with its Michigan Diplomates and is the only nationally recognized authority to which Michigan endodontists may look in the future for Board certification.

Defendant urges the court to ignore *Burger King* and *Hahn* because those cases were contract cases, while this is a tort action. However, jurisdiction lies where any transaction of business gives rise to a cause of action. Neither the statute nor case law suggest "any transaction of business" be given a different meaning depending upon whether the cause of action is in tort or contract. Contract negotiation and formation are business transactions. It is of no moment, for purposes of determining the existence of jurisdiction, what type of cause of action arises from a business transaction under Mich.Comp. Laws § 600.715(1).

We conclude that the Board's exchange of correspondence and telephone calls with Dr. Lanier in Michigan, including the collection of an application fee as part of an agreement to consider her credentials for Board certification for practice in Michigan, was the transaction of some business in Michigan within the meaning of Mich. Comp. Laws § 600.715(1).

### B.

■ The "transaction of any business" in Michigan by the Board would, however, confer no limited personal jurisdiction upon the District Court unless the cause of action pleaded by the plaintiff arose out of the business transacted there. The "arising out of" requirement is the second criterion for establishing limited personal jurisdiction under Mich.Comp. Laws § 600.715(1).

Defendants insist that even if they transacted business in Michigan, the plaintiff's cause of action, if any, did not arise out of the business that was transacted in Michigan, but from the unfairly evaluated oral examinations given in Arizona and Illinois.

We are unpersuaded that the plaintiff's relationship and contacts with the defendant Board can be logically or legally fragmented in that fashion. The application, evaluation and rejection process was a mosaic of activity which began with the plaintiff's inquiry of the defendants in Illinois about the requirements for board certification and was concluded with the defendants' advice that the plaintiff was denied certification but was invited to reapply; every step of which was a constituent part of the whole. Whether the decision to discriminate occurred before, during, or after the oral examination administered to the plaintiff is not controlling and indeed may well be a contested matter of proof; it arose from, was occasioned by, and would not have occurred but for the totality of Dr. Lanier's efforts to obtain board certifi-

cation-efforts which derived, as we have held, from the defendants' limited business contacts with Dr. Lanier in Michigan.

If, as Dr. Lanier claims, the Board rejected her because she is a woman, it must have done so, based at least in part, upon what it learned about her from its professional business contacts with her in Michigan during the very earliest stages of the application process. Whether the final decision to discriminate was made in Illinois, or Arizona, or elsewhere, it must necessarily have arisen from the Board's assessment of facts it obtained as a result of its contacts with Dr. Lanier in Michigan, and but for which Michigan contacts it would not have acted upon her application at all and thus would not have made the discriminatory decision.

Two theories exist as to the "arising from" requirement of Mich.Comp. Laws § 600.715(1). In *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir.1972), the Sixth Circuit applied a "made possible" test:

> Both acts [breach of contract and tortious misconduct] and their consequences were made possible only by [defendant's] transaction of business with [plaintiff].... Under the circumstances we believe that the cause of action for damage to business reputation grew directly from the transaction of business in Ohio.

*Id.* at 231. The Seventh Circuit applies a similar test: if the cause of action lies in the "wake" of the business transaction, it arises from it. *In re Oil Spill by Amoco Cadiz off Coast of France*, 699 F.2d 909 (7th Cir.1983), *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 172 (1983). *See also, Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209 (7th Cir.1984).

Clearly the cause of action herein, if one exists, arose from, was "made possible" by, and lies in the "wake" of the application process, much of which occurred in Michigan. Further, Dr. Lanier's application for

certification made the discrimination possible and, according to plaintiff's theory, foreordained it.

We are satisfied that the uncontested matters of record show that the defendant Board, and through it its principal the Association, transacted some of its business with Dr. Lanier in Michigan—an amount sufficient to be "the transaction of any business"—and that the plaintiff's asserted cause of action arose out of that business. We conclude, therefore, that the Michigan long-arm statute conferred upon the district court jurisdiction over the defendants.[1]

### III.

However, the Michigan long-arm statute is subject to constitutional due process considerations. Although the statute may, by its terms, give jurisdiction to the courts, it must also pass constitutional muster as applied in this case. *See Khalaf v. Bankers & Shippers Inc. Co.*, 404 Mich. 134, 273 N.W.2d 811 (1978) (citing *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). Under the federal constitution, long-arm jurisdiction may only be asserted if, 1) defendants purposefully availed themselves of the privilege of conducting activities in Michigan; and 2) "the acts of the defendant or consequences caused by the defendant must have had a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Industries Inc.* 401 F.2d 374, 381 (6th Cir.1968). *See also, Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *R.L. Lipton Distributing Co. v. Dribeck Importers, Inc.*, 811 F.2d 967 (6th Cir.1987).

*Burger King* extensively addressed the constitutional requirements for jurisdiction. The Supreme Court explained that the due process clause protects an individu-

---

**1.** This is not the first time this same district court has exercised jurisdiction over the Association and the Board. On the basis of essentially identical contacts with Michigan, the district court determined that it had jurisdiction over these defendants in *Dietz v. American Dental*

*Association*, 479 F.Supp. 554 (E.D.Mich.1979). That case is not precedent for what is decided here, however, because there the defendants did not deny that they carried on "a continuous and systematic part" of their general business in Michigan.

al's liberty interest by requiring that a court exercise jurisdiction only over defendants with "contacts, ties, or relations" with the forum state sufficient to provide them with fair warning their activities may subject them to suit there. *Id.* at 471–72, 105 S.Ct. at 2181–82. This "fair warning" requirement has been met when a defendant has " 'purposefully directed' his activities at residents of the forum … and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472, 105 S.Ct. at 2182. By requiring these minimum contacts, the constitution provides defendants the opportunity to foresee the possibility of being haled into court, so they can structure their activities accordingly.

By "purposefully availing" itself of opportunities in the forum, such as by purposefully directing itself to forum residents, a defendant opens itself up to that forum's jurisdiction. "[W]here the defendant 'deliberately' has engaged in *significant activities* within a State … *or* has created '*continuing obligations*,' between himself and residents of the forum … he manifestly has availed himself … and … it is presumptively not unreasonable to require him to submit to … litigation in that forum.…" *Id.* at 475–76, 105 S.Ct. at 2184 (emphasis added). Physical presence of the defendant is irrelevant. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."[2] *Id.*

At this juncture, it is worthwhile to point out that the question of which party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident. *Southern Machine Co.,* 401 F.2d at 382. Thus, defendants' contention that they did not solicit Lanier's application is irrelevant.

Once plaintiff shows that a defendant purposefully directed its activities towards forum residents, the defendant cannot defeat jurisdiction unless it presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185.[3] Yet, the Supreme Court has stopped short of allowing jurisdiction *whenever* an out-of-state defendant contracts with a forum resident. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. Rather, prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing need be addressed to evaluate, in a "highly realistic" way, the intended future consequences that are "the real object of the business transaction."

In *Burger King,* the court held the district court in Florida had jurisdiction over a Michigan resident. That Michigan resident had never been to Florida, had no offices there, and no physical contacts there. But, the resident "deliberately 'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that … derive from affiliation with a nationwide organization." *Id.* at 479–80, 105 S.Ct. at 2186. The franchise negotiation and agreement therefore had a "*substantial* connection with" Florida. *Id.* at 479, 105 S.Ct. at 2186 (emphasis in original.)

Likewise, *Khalaf,* 404 Mich. at 154, 273 N.W.2d 811, held:

Since insurers generally seek to sell their services in new territories including other states, and depend on out-of-state

---

**2.** We do not understand the *Burger King* reference to "commercial actor[s]" to preclude application of the rule to non-commercial professional business contacts such as occurred in this case.

**3.** *See also McGee,* 355 U.S. 220, 78 S.Ct. 199, wherein the court permitted personal jurisdiction of the California courts over a Texas insurance company solely on the contact of that defendant sending one letter offering insurance to one individual in the forum and collecting premiums therefrom; *First Security Bank v. McMillan,* 627 F.Supp. 305 (W.D.Mich.1985), which held that a Texan's signing a note guaranteeing a Michigan company's loan had a substantial connection with Michigan justifying jurisdiction there because that loan allowed the Michigan business to continue its business there.

business to generate volume, it is ordinarily fair to conclude that their involvement in commercial activity respecting a state is a direct result of a purpose to expand their business.

Insurance agents, on the other hand, do not generally seek to expand their business into other states. They will, nevertheless, find themselves writing insurance for risks in other states as a result of the expansion of their customers' businesses. They become involved in another state, not because of their own purpose to do so, but because of their customers' purpose.

From this distinction, *Khalaf* held that the court had no jurisdiction over the insurance agent; however, the court would have had jurisdiction over an insurance company. The key factor, therefore, seems to be that defendants who generally seek to sell their services in new territories, and depend on such out-of-state business to generate volume, are within the court's jurisdiction.

■ In this case, the "real object of the business transaction" was threefold. Lanier sought to acquire and exploit board certification in Michigan. The Board sought both to acquire a Michigan resident's fees to offset their own costs, to "contribute to the advancement of ... endodontics by elevating the standards of endodontic practice ... through the certification of candidates in that specialty" by adding to its roster of Michigan diplomates, and to extend its influence and prestige in Michigan as the principal national determiner of special competence for the practice of endodontics. Thus, the real object of the Board's contacts with Michigan is to have ongoing, far-reaching consequences in the Michigan dental services market. These conse-

quences are continuous and substantial, affording jurisdiction, *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185–86; *Southern Machine*, 401 F.2d at 381.

The Board is a nationwide organization which depends upon having members in every state of the Union. Defendants have purposefully availed themselves of the opportunity to gain members and certify members in the state of Michigan. Certification has a substantial impact on the state. Thus, it is constitutionally fair for the courts in Michigan to exercise jurisdiction over such defendants.[4]

## IV.

■ Appellees also raise numerous issues which were not discussed by the district court or in the appellant's brief: conflict of laws, choice of laws, the terms of the Elliot–Larsen Act, and the existence of vicarious liability. Because these matters were not addressed by the district court, appellees did not cross-appeal the court's decision not to reach them, and appellant has not addressed them. Although raised in the appellees' brief, these issues are not properly presented on appeal and we shall not address them. Defendants claim we ought to address them because we may affirm the district court's judgment on any ground fairly in the record. However, the district court did not give judgment on any substantive issues but merely made an order on a procedural ground.

Appellees may offer any supportable argument in defense of the district court's conclusion that it lacked personal jurisdiction over defendant, but may not seek this court's review of wholly different substan-

---

4. Again, in *Hahn*, 698 F.2d at 52, the court held jurisdiction would not violate due process because the transactions of applications for law school were not isolated but "were part of [Vermont Law School's] efforts to serve the market for legal education in Massachusetts." Likewise here, the Board's transactions with Dr. Lanier concerning board certification were but a part of its efforts to further influence the quality of dental care in Michigan and enhance its own stature as a certifying organization.

In *Southern Machine Co*, 401 F.2d at 382–83, the Sixth Circuit defined purposeful availment

as follows: "[D]efendant has purposefully availed himself of the opportunity of acting there [in the forum state] if he should have reasonably foreseen that the transaction would have consequences in that state." By becoming board certified, an endodontist makes herself more marketable by enhancing her professional status and attracting more referral patients. Defendants knew plaintiff practiced solely in Michigan and intended to continue to do so. Thus, they should have reasonably foreseen that denying Lanier board certification would have consequences in Michigan.

tive law questions; that would be to seek review, reversal and/or modification of the district court's decision not to reach the substantive law questions, a decision that was never appealed from. *See* Annotation, 63 L.Ed.2d 911 (1980) and cases cited therein.

We REVERSE the decision of the district court finding no limited personal jurisdiction under Mich.Comp. Laws § 600.715(1), and REMAND for further proceedings.

HULL, District Judge, concurring.

I agree with the majority's opinion on both the removal question and the issue of long-arm jurisdiction. I write separately, however, to express my reasoning on the issue of long-arm jurisdiction.

As Judge Ryan recognizes, Michigan's long-arm statute provides, in Mich.Comp. Laws § 600.715(1), that the transaction of any business within the state constitutes a sufficient basis on which to find that a corporation is subject to limited personal jurisdiction in Michigan for acts arising out of its business transactions there. The Michigan Supreme Court said in *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971), that the phrase "the transaction of any business" should be construed broadly, and the Sixth Circuit stated that a defendant has acted to "transact business in a state" when its actions have a "realistic impact" on the commerce of the state. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir.1972). In this case the defendant Board of Endodontics has certified a number of Michigan residents for diplomate status; it depends on the certification of specialists, in states such as Michigan for its livelihood; and its ongoing relationships with Michigan dentists in the field of endodontics has a direct impact on citizens of Michigan. Additionally, by publishing the names of diplomates and holding them out as the best practitioners in the field of endodontics, the Board encourages dentists in Michigan to refer patients to Board certified diplomates, and it encourages citizens of Michigan to see these diplomates, rather than specialists not certified by the Board. Therefore, by engaging in these activities, the Board has a direct impact on the commerce of Michigan and it has purposefully availed itself of the privilege of transacting business there.

The dissent relies on *Witbeck v. Bill Cody's Ranch, Inc.*, 428 Mich. 659, 411 N.W.2d 439 (1987), holding that, under the circumstances involved, the exercise of long-arm jurisdiction would violate the Constitution. The decision in *Witbeck* consisted of two cases consolidated for appeal, and in the case relied upon by the dissent, the plaintiff, a resident of Michigan, was injured when she fell off a horse at a dude ranch in Wyoming. The plaintiffs had arranged to vacation at the ranch, and the only contacts the ranch had with Michigan were through one advertisement in a tour guide, that the plaintiffs saw in Michigan, and a brochure mailed to the plaintiffs in Michigan following a telephone conversation with them. The ranch had only limited contact with a very small number of Michigan residents, and the Michigan Supreme Court was correct in ruling that this limited number of contacts was not a sufficient basis on which to exercise personal jurisdiction.

*Witbeck*, however, is distinguishable from the present case. The Board of Endodontics had much more substantial contacts with the state of Michigan. It set itself out as an expert in the field of endodontics, it established mandatory standards that Michigan dentists must meet in order to obtain diplomate status, and it established channels for providing regular advice and service to dentists in Michigan who desire certification. It was recognized in *Asahi Metal Ind. Co. v. Superior Court of California*, — U.S. —, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), that establishing channels for providing service to customers in the forum state is one indication that a defendant is subject to personal jurisdiction there. *Id.* 107 S.Ct. at 1033, 94 L.Ed.2d at 104.

Additionally, the Supreme Court in *Asahi* stated that the reasonableness of the exercise of jurisdiction depends in part on the interests the forum state has in adjudicating the dispute. *Id.* 107 S.Ct. at 1034, 94

L.Ed.2d at 105. In the present case, a number of Michigan residents are affected by the Board's activities, and the State of Michigan has a compelling interest in the Board's actions because of its important duty of seeing that residents of Michigan receive quality dental care. In *Witbeck,* only a small number of Michigan residents, who chose to vacation at the ranch, were affected by the defendant's actions, and no service necessary to the well-being of Michigan citizens was involved. Therefore, because of its interest in seeing that Michigan residents are provided with a high caliber of dental care, Michigan's interest in adjudicating disputes involving the Board of Endodontics is much greater than any concern it has with adjudicating disputes involving a ranch in Wyoming.

In *Hahn v. Vermont Law School,* 698 F.2d 48, (1st Cir.1983), cited in the main opinion, the First Circuit stated that the key question in deciding whether personal jurisdiction exists over a defendant holding itself out as an educator or certifying body is whether the defendant engaged in any activity constituting the transaction of business relating to the plaintiff's decision to apply. *Id.* at 50. Here, the Board of Endodontics clearly engaged in activity which encouraged Ms. Lanier and other specialists in the field to apply for its diplomate status. The Board of Endodontics had numerous certified specialists in Michigan, and its supposed expertise was well known in the state at the time Ms. Lanier applied. Over the years, dentists and Michigan residents have consistently relied on the Board to supply references for specialists in the field of endodontics. Therefore, the Board's contact with Ms. Lanier was not an isolated occurrence, but, to the contrary, arose from its direct efforts to serve the market for its product, Board certification. Therefore, according to the Supreme Court, the exercise of personal jurisdiction over the Board and its parent organization in Michigan is proper. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Additionally, the facts of this case are unlike the facts in the Supreme Court case of *Asahi Metal Ind Co. v. Superior Court,* — U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), relied upon by the dissent. In *Asahi,* an attempt was made by a Taiwanese manufacturer to sue a Japanese corporation for indemnity in a California court. The Japanese corporation claimed that mere awareness and foreseeability on its part that components it manufactured would end up in California was an insufficient basis on which to base personal jurisdiction over it in California. The Supreme Court was divided on the issue of whether the Japanese corporation had the requisite minimum contacts needed to subject it to personal jurisdiction in California. The Court, however, unanimously ruled that it was unreasonable to expect a Japanese corporation to appear in court in California to defend against a Taiwanese corporation.

The Japanese corporation in *Asahi* was in a position similar to that of an importer or manufacturer selling to independent wholesalers, who then decide to provide the product to retailers in various states. The Sixth Circuit has ruled that in cases of this type, a manufacturer is not subject to jurisdiction in a forum merely because it was foreseeable that its products would eventually arrive there. *See R.L. Lipton Distribution Co. v. Dribeck Importers, Inc.,* 811 F.2d 967 (6th Cir.1987).

The facts in the present case are quite different from those in *Asahi* or *Dribeck Importers, Inc.* Ms. Lanier is a Michigan resident who has been seriously affected by the defendant Board's activities and this is not a case involving two foreign parties, as was the situation in *Asahi.* Furthermore, even if the requisite minimum contacts for the exercise of personal jurisdiction did not exist in *Asahi* and *Dribeck Importers, Inc.,* they do exist in the present case. In *Asahi,* the Japanese corporation merely provided component parts to manufacturers who incorporated these parts into their products and shipped the products out, with some of them ending up in California. The Japanese corporation had no direct contact with citizens of the forum. 107 S.Ct. at 1033, 94 L.Ed.2d at 105. Likewise, in *Dribeck Importers, Inc.,*

the defendant importer merely provided its product, Beck's Beer, to independent distributors who then provided the beer to retailers in various states. The importer, itself, had engaged in no meaningful contacts with the forum. 811 F.2d at 970. Ms. Lanier, on the other hand, did have direct contact with the Board of Endodontics, and it maintained ongoing ties with the state of Michigan because of its undertaking to certify individuals capable of providing quality dental care in the field of endodontics. Therefore, the relationship the Board had with Ms. Lanier and other citizens of Michigan was much stronger than the tenuous ties involved in *Asahi* and *Dribeck Importers, Inc.*

Accordingly, for the reasons stated above, it is my opinion that the defendants are subject to personal jurisdiction in Michigan, pursuant to the State of Michigan's long-arm statute, and also that it is constitutionally permissible to subject the defendants to personal jurisdiction in Michigan. I reach this conclusion because the defendants purposefully availed themselves of the privilege of transacting business in Michigan, the plaintiff's cause of action arose from the defendant's activities there, and it is reasonable to expect the defendants to defend this lawsuit in Michigan.

KRUPANSKY, Circuit Judge, concurring in part, dissenting in part.

I concur with the majority's assessment that plaintiff has waived any objection she may have had to the untimeliness of the defendants' removal petition. However, because the majority's decision addressing the issue of long arm jurisdiction does not comport with Michigan law or Supreme Court pronouncements, I am constrained to respectfully dissent from the disposition of that issue.

The instant dispute arose as a result of the plaintiff's application for "Diplomate" status with the Board of Endodontics, which certification in essence constitutes an imprimatur of excellence in the field of endodontics. The defendant organizations are Illinois non-profit corporations which maintain their sole respective offices in Chicago, Illinois. Neither owns property, maintains offices, officers, agents, employees, bank accounts, books, records, or phone listings in the State of Michigan, or is licensed to or has authorized employees to conduct business in that state, although the Association has certified a number of qualified Michigan residents with "Diplomate" status. Defendants did not nor do they presently advertise to solicit applicants for Diplomate certification. Plaintiff voluntarily initiated the Board's certification procedure by requesting an application through the mail. The Board responded by telephone and through correspondence. The plaintiff thereafter successfully completed the written and case study section of the admission examination, but failed two successive oral examinations conducted in Phoenix, Arizona, and Chicago, Illinois, respectively.

The plaintiff's cause of action was initiated in a Michigan state court and charged the Board with sex discrimination in rejecting her application for certification as a Diplomate. Plaintiff alleged that the Board's rejection violated the Michigan Elliott–Larsen Civil Rights Act, Mich.Comp. Laws § 37.2101 *et seq.* Asserting diversity of citizenship, the defendants removed the case to federal district court. Plaintiff challenged the removal petition as untimely and moved for a remand to state court. The federal district court denied the plaintiff's motion to remand and granted the defendants' motion to dismiss for lack of in personam jurisdiction. From these rulings, plaintiff has appealed.

In determining if, in a diversity case, a federal court may exercise personal jurisdiction over a non-resident defendant, it must initially determine if personal jurisdiction existed under the law of the forum state and if the exercise of personal jurisdiction was consistent with due process. *World Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In the instant case, the pertinent Michigan long arm statute reads as follows:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgment against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

Mich.Comp. Laws § 600.715(1).

Although Michigan courts have at times indicated that they intended their long arm statute to reach the outmost limits permitted by due process,[1] this Circuit has concluded that the "Michigan courts are, in fact, stopping short of that boundary." *Rann v. McInnis*, 789 F.2d 374, 377 (6th Cir.1986). "Our duty in this post-*Erie* diversity case is to stop where the Michigan courts have drawn the line and not push jurisdiction to the limits of due process." *Id.* at 377; C. Wright, the Law of Federal Courts § 64 at 420–4121.

Although some Michigan courts have declared that the term "any business" comprehends, "the slightest business",[2] the Sixth Circuit has ruled that the "any business" requirement is not satisfied unless "obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state." *In–Flight Devices Corp. v. Van Dusen Air, Inc.* 466 F.2d 220, 226 (6th Cir.1972).

In the instant case, the Board's contacts within Michigan do not rise to that level. The majority urges that the Board, by furnishing applications upon request, by accepting applications with a processing fee, by corresponding and communicating and

by entering into what the majority has characterized as a prospective "contractual arrangement" with the plaintiff has satisfied the condition of transacting "any business" within the meaning of Mich.Comp. Laws § 600.715(1).

Such an expansive interpretation has, at least at this writing, not been embraced by the Michigan courts which have, as noted by this Circuit, expressly avoided over-extending the reach of that state's long arm statute. Indeed, in the latest Michigan Supreme Court ruling interpreting the scope of its long arm jurisdiction on facts strikingly similar but far more compelling than those of the instant case the court found that a dude ranch which advertised in a regional tour guide, participated in a nationwide appointment service, entertained interstate telephone conversations and mailed brochures and letters advertising its recreational facilities to prospective guests could not be subjected to in personam jurisdiction because its activities were insufficient to support an exercise of jurisdiction. "Such tenuous threads which purportedly link the defendant to Michigan are not "akin ... to a deliberate undertaking to do or cause an act or thing to be done in Michigan ..." *Witbeck v. Bill Cody's Ranch, Inc.*, 428 Mich. 659, 411 N.W.2d 439, 446 (1987), *citing Khalaf v. Bankers & Shippers Ins. Co.*, 404 Mich. 134, 153, 273 N.W.2d 811 (1978). *Witbeck* is not meaningfully distinguishable from the instant case. The *Witbeck* court has cautioned that over-reliance on telephone calls and correspondence to establish jurisdiction would unduly "burden businesses in Michigan as well as in other states." *Id.* at 446. *See also, Rann v. McInnis*, 789 F.2d 374 (6th Cir.1986) (exercise of personal jurisdiction improper under Michigan law despite defendant's "solicitation" of plaintiffs by telephone).[3]

**1.** *City Suburban Agency, Inc. v. Dade Helicopter Services, Inc.*, 141 Mich.App. 241, 366 N.W.2d 259 (1985); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981); *Ag-Chem Equipment Co., Inc. v. Avco Corp.*, 666 F.Supp. 1010 (W.D.Mich.1987).

**2.** *See, e.g. Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971).

**3.** In other jurisdictions, mailings, correspondence, or phone calls do not suffice to support the exercise of personal jurisdiction under similar "transacting business" provisions. *See, e.g., Institutional Food Mktg. Associates v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th

Plaintiff has also charged in this appeal that the Board's act of "entering into a contract with Dr. Lanier" satisfied the term "transaction of any business." Clearly, the *Witbeck* court has rejected that argument. In *Witbeck*, the Michigan plaintiff confirmed a reservation with the defendant ranch in Wyoming and entered into a "contract" for services. In considering the facts supporting the acceptance of the plaintiff's reservation, the *Witbeck* court correctly noted that the contract was one which caused a Michigan resident to "leave the state and to go to Wyoming." 411 N.W.2d at 446. This type of an agreement did not, in the opinion of the court, give rise to a "substantial connection" with Michigan, and therefore, jurisdiction could not constitutionally be exercised. *Id.* Similarly, in the instant case, the "contract", if one existed, between the Board and Lanier was one which, as in *Witbeck*, caused the Michigan resident to "leave the state" and travel to Arizona and Chicago for her oral examinations.

The Supreme Court and the Sixth Circuit have substantially adopted the rationale of *Witbeck* in concluding that agreements which do not result in "continuing obligations" between the forum state plaintiff and the non-resident defendant are insufficient to support the invocation of long arm personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105

S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985). The instant defendants clearly did not enter into a "continuing relationship" with the plaintiff. Indeed, the exchange of information between the plaintiff and the Board contemplated no continuing relationship between them because the Board procedurally retained the option to reject any application, which option it elected to ultimately exercise in rejecting Lanier's professional qualifications for certification. Accordingly, upon the facts of this case the purported contract between the parties gave rise to a relationship insufficient to support the exercise of jurisdiction. *Cf. Hooks v. Hooks*, 771 F.2d 935, 945) (6th Cir.1985) (an individual's contract with an out of state party insufficient to establish minimum contacts in other party's home forum); *Rann*, 789 F.2d at 376 (contract consisting of receipt of Michigan Blue Cross/Blue Shield payments, combined with solicitation of plaintiffs over the telephone, did not warrant exercise of Michigan's long arm statute).[4]

Additionally, the Board's broad statement of principle to "protect the public" by "raising the standards of endodontics ..." fails to support an argument to invoke Michigan long arm jurisdiction. Indeed, no court has supported the exercise of jurisdiction based upon such generalizations. Notably, the statement is not directed to the state of Michigan or identifiably to any

---

Cir.1984); *Smith v. Piper Aircraft Corp.*, 425 F.2d 823, 825 (5th Cir.1970); *Selman v. Harvard Medical School*, 494 F.Supp. 603, 612 (S.D.N.Y), *aff'd*, 636 F.2d 1204 (2nd Cir.1980).

**4.** *Hahn v. Vermont Law School*, 698 F.2d 48 (1st Cir.1983) is readily distinguishable on its facts from the instant case. In *Hahn*, the plaintiffs' application for admission into Vermont Law School (VLS) had been duly accpeted and he had in fact attended that institution for a period of three years and had been awarded his law degree. His breach of contract cause of action against VLS stemmed from his receipt of a failing grade and his efforts to resolve the matter through administrative channels which concluded in a disposition which he considered unsatisfactory. The First Circuit decision invoking the Massachusetts Long Arm Statute described the extensive activities of VLS within Massachusetts as factually satisfying the "transacting any business" language of the Massachusetts statute:

In 1980 and 1981 VLS faculty members visited five Massachusetts colleges for the purposes of recruiting. The school at times also has placed advertisements in Boston newspapers. Under these circumstances, the assertion of jurisdiction over VLS in Massachusetts does not offend traditional notions of fair play or substantial justice.

Moreover, it is significant to note that unlike the Michigan Supreme Court's pronouncements defining the scope of its long arm statute, the First Circuit noted that:

"... [t]he Massachusetts courts have not defined the scope of the "arising from" requirement of the long-arm statute ..."

Factually apparent in *Hahn* was the existence of a valid agreement evidenced by the acceptance of Hahn's application for enrollment as a student at VLS and the intent of the parties to enter into a "continuing relationship" for the period of his attendance at the institution.

other specific state. The statement of principle, unsupported by specific overt action within or directed toward residents of Michigan that would constitute a "transaction of business", is of no consequence in considering the case at bar. To the contrary, the activities relied upon by the appellant to support the "transaction of business", i.e., phone calls and limited correspondence, have clearly been repudiated as insufficient to invoke jurisdiction.

I also find that the appellant has failed to allege facts to support the second prong of the Michigan long arm statutory test— namely that plaintiff's tort claim must "arise out of" the "transaction of any business." Numerous courts have held that tort claims do not "arise out of" mere solicitations, advertisements, or telephone contacts. *See e.g. Singletary v. B.R.X., Inc.*, 828 F.2d 1135 (5th Cir.1987) (products liability claim did not "arise out of" advertisements in trade magazines); *Marino v. Hyatt Corp.*, 793 F.2d 427, 430 (1st Cir. 1986) (hotel slip and fall accident did not "arise out of" reservation contract and advertisements); *Pearrows v. Nat'l Life and Accident Ins. Co.*, 703 F.2d 1067, 1069 (8th Cir.1983) (theme park's supplying of brochures to forum state plaintiff not sufficiently connected to tort action at theme park; tort action did not "arise out of" supplying of brochures"). In short it cannot be said that any alleged acts of discrimination "grew directly" from the contacts at issue. *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 223 (6th Cir.1972). Accordingly, I must respectfully conclude that the Board's contacts with Michigan fall short of the "transacting business" or "arising out of" requirements of the Michigan long arm statute.

Apart from the foregoing statutory analysis, the exercise of jurisdiction would also impinge upon constitutional protections. In evaluating the due process standard applicable to long-arm jurisdiction issues, this court must consider a three-part analysis:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state ... Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*R.L. Lipton Distributing Co. v. Dribeck Importers, Inc.*, 811 F.2d 967, 969 (6th Cir.1987).

The first two elements of the Sixth Circuit test are similar to the long-arm statutory analysis already discussed, *supra.* As demonstrated, *supra*, plaintiff has not shown that the defendants purposefully availed themselves of the privilege of acting in the forum state. Nor did the cause of action arise from the defendant's activities within the forum state. However, the third prong of the Sixth Circuit test provides an independent hurdle—the acts or consequences caused by the defendant must have had a substantial connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Appellants have not alleged sufficient facts to satisfy this third requirement. "While the first two elements of the test involve a search for the specific types of contacts which have been held essential to the maintenance of jurisdiction, the third demands flexibility and an appraisal of the overall circumstances of each case." *In–Flight Devices*, 466 F.2d at 226; *Ag–Chem Equipment Co.*, 666 F.Supp. at 1013.

The Supreme Court discussed this third element in its decision in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In that case, the court unanimously found that the assertion of jurisdiction over a Japanese manufacturer would "offend traditional notions of fair play and substantial justice," the equivalent of the third prong of the three-part test of jurisdiction enunciated by the Sixth Circuit. *Ag–Chem Equipment Co.*, 666 F.Supp. at 1014.

*Asahi*, like the instant defendants, had no office, agent, employees, or property in the forum state. Neither Asahi nor the defendants in this case advertised or solic-

ited business in the forum state. *Id.* at 1033. Moreover, in both *Asahi* and in this case, plaintiff's primary argument supporting jurisdiction was that defendant was an interstate actor, "aware" that its acts would eventually affect the forum state, and "depending on out-of-state business to generate volume." *Asahi,* 107 S.Ct. at 1031, 1033.

The Supreme Court unanimously rejected the plaintiff's argument in *Asahi.* The Supreme Court has announced that a defendant's mere awareness that its actions may affect many states does not suffice for justifying long-arm jurisdiction in a particular state. Nor is a defendant's indirect benefit from transactions in a forum state a "persuasive factor in the jurisdictional inquiry." *Id.* at 1031, 1033. A generalized desire to serve the national market by selling products or services in the nationwide "stream of commerce" does not suffice for purposes of due process. *Id.* at 1033.

Accordingly, such factors as the Board's desire to protect the public throughout the nation, its dependence on "out-of-state business to generate volume," or its status as a "nationwide organization" do not render the exercise of jurisdiction consistent with "notions of fair play and substantial justice." [5]

Given this set of facts and given the clear authority of recent case law, the isolated phone calls and letters of the Board, unrelated to the cause of action, simply do not suffice as "minimum contacts" or constitute "transaction of business" significant enough to constitutionally trigger the long arm statute.

Accordingly, I would conclude that upon the facts of this case the defendants' contacts within the State of Michigan did not satisfy either the "transaction of any business" element nor the "arising out of the act" requirements of Michigan's long arm statute. To hold otherwise would offend notions of fair play and substantial justice thereby infringing upon the due process protections of the Fourteenth Amendment. I would affirm the district court's disposition in its entirety.

---

**5.** The plaintiff's reliance upon *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) is misplaced. In upholding the Florida Long Arm Statute, the Court concluded that a Michigan franchisee who deliberately reached out beyond his state of residence, who negotiated and executed a long term franchise, who accepted the manifold benefits that would arise from affiliation with a nationwide organization, who entered into a carefully structured 20–year relationship which envisioned continuing and wide-reaching contacts within Florida, who accepted regulation of his Michigan business from the Miami headquarters of the franchisor and who was required to make monthly payments to the franchisor in Miami could constitutionally be subjected to the long-arm jurisdiction of Florida in a dispute arising out of the franchise arrangement. The court's specific factual findings, coupled with the stipulation of the parties to the franchise agreement that the franchise contract "shall be deemed made and entered into in the state of Florida and shall be governed and construed under and in accordance with the laws of the state of Florida", supported the court's decision that the "quality and nature" of the business relationship could not be viewed as "random", "fortuitous," or "attenuated" and contemplated a continuing long term relationship between the parties of sufficient consequence to support the invocation of Florida's Long Arm Statute. Certainly, the extensive relationships that were contemplated and which actually existed between the parties within the State of Florida comparably overwhelm the inconsequential limited correspondence and telephone conversations between the parties that the plaintiff has relied upon to satisfy the "transacting any business" and "arising from" requirements of the Michigan statute.