Muriel D. HUGHES, Plaintiff,

v.

CABANAS del CARIBE HOTEL, Defendant.

No. 86–CV–70942–DT.

United States District Court, E.D. Michigan, S.D.

July 30, 1990.

Gerald Padilla, Detroit, Mich., for plaintiff.

Robert E. Forrest, Southfield, Mich., for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT

ROSEN, District Judge.

This matter is presently before the Court on Defendant Cabanas del Caribe Hotel's Motion for Relief from Judgment filed on May 16, 1990. Cabanas del Caribe Hotel is a hotel situated in Cozumel, Mexico. Defendant seeks relief from the default judgment in the amount of $126,797.00 entered in this "slip and fall" diversity case on August 18, 1987 by Judge Pratt.[1] Default Judgment was entered based upon the following allegations of the Plaintiff.

Ms. Hughes claimed that she fell on the bathroom floor of the hotel room in which she stayed from March 4—March 10, 1983 and that her fall resulted in injury to her back. She alleged that the hotel was negligent in failing to maintain and replace the bathroom light and in failing to maintain the shower door, which permitted water to leak upon the floor.

At the time of her injury, Ms. Hughes was in her final semester of law school. She claimed that, as a result of her injuries, she was prevented from taking final examinations on time, and that she was also hampered in studying for her bar examination, which she failed on her first try. Plaintiff eventually passed the bar and was able to accept an offer for an attorney position, but not until May of 1984, eight months after she was scheduled to have started in that position. In addition to claiming damages for lost wages as a result of her injuries, she asked for damages for pain and suffering, medical, hospital, doctor, and therapist expenses. Judge Pratt awarded her $11,794 for actual medical damages; $15,000 in lost wages; $25,000 for mental anguish; and $75,000 for pain and suffering, (totaling $126,794), based upon her proofs (which consisted of medical bills and her own testimony) at the July 2, 1987 hearing on Plaintiff's Motion for Default Judgment.

## I. STATEMENT OF FACTS

### A. *Plaintiff's Complaint.*

Plaintiff, Muriel Hughes filed her original Complaint with a Jury Demand in this Court on March 10, 1986. Plaintiff's Complaint was captioned *"Muriel D. Hughes, Plaintiff, v. Cabanas del Caribe Hotel, formerly known as Cozumel Caribe Hotel, Defendant"*. [Emphasis Added].

Then on March 28, 1986, the Plaintiff filed a First Amended Complaint. The First Amended Complaint also styled the Defendant as "Cabanas del Caribe Hotel, *formerly known as Cozumel Caribe Hotel"* [Emphasis Added].

The First Amended Complaint tracks the language of the original Complaint, in all material respects, the only real change being the addition of claims for damages for "feelings of humiliation, outrage, and indignity", in paragraph 18. Of particular note for purposes of the motion *sub judice,* Plaintiff alleged in paragraph 5 of the First

---

1. Defendant also filed on May 16th a second Motion for "Stay of Judgment" requesting entry of an Order staying the execution of or any further proceedings to collect the $126,797 Judgment pending the Court's decision of Defendant's Motion for Relief from Judgment.

Amended Complaint the same language found in paragraph 5 of the original Complaint with respect to the issue of Defendant's doing business in the Eastern District of Michigan:

> 5. At all times material hereto, the Defendant operated its hotel business for profit and invited members of the general public to come to its place of business by advertising through Thompson Vacations, Inc. in the Detroit, Michigan area. The Plaintiff made reservations at Defendant's hotel and paid for same through Defendant's agent, the Automobile Club of Michigan, in the City of Detroit, County of Wayne, State of Michigan.

These allegations are discussed in more detail, *infra.*

### B. *Service of Plaintiff's Complaint upon the Cabanas del Caribe Hotel.*

Copies of Plaintiff's Complaint, First Amended Complaint and a Summons were sent by the Court Clerk to Cabanas del Caribe Hotel by registered mail, return receipt requested, in accordance with the procedures for service of process upon foreign defendants set forth in Fed.R.Civ.Pro. 4(i)(1)(D). A certificate of mailing of the above items was filed by the Court Clerk on May 6, 1990. On May 29, 1986, the certified mail receipt was returned to the Clerk and filed showing that the package containing the documents mailed by the Deputy Clerk had been received on May 21, 1986. According to Fernando Hereida who has been the manager of the Cabanas del Caribe Hotel since June 1982, the receipt was apparently signed by one of the bellboys employed by the Hotel in May, 1986. The bellboy neither speaks nor reads English, and he was not responsible for reviewing mail received by the Hotel. No one in management has any recollection of having received the documents mailed by the Court Clerk.

### C. *The Default Proceedings.*

No action having been taken in the case during the next three months, on September 5, 1986, Judge Pratt issued an order to show cause why the case should not be dismissed for failure to prosecute. Plaintiff then sought entry of default, and pursuant to that request the Clerk entered default on October 8, 1986. However, Plaintiff took no further action to obtain entry of a default *judgment* until reminded to do so by the Court by virtue of show cause orders dated February 10 and April 14, 1987. The Court ordered the Plaintiff to show cause why the case should not be dismissed for lack of prosecution.

On response to the show cause orders, on April 30, 1987, the Plaintiff filed a Motion for Entry of Default Judgment. Plaintiff also filed a proof of service of the motion indicating service by mail upon the Hotel. According to Mr. Hereida, however, the Cabanas del Caribe Hotel has no record of having ever received the motion.

On May 6, 1987, the Court entered an order scheduling a hearing on Plaintiff's Motion, and setting due dates for the filing of the Defendant's answer to the motion and for the Plaintiff to file a reply brief. Proof of service by the deputy court clerk of copies of the order upon both Plaintiff and Defendant is noted on the face of the order. As with the other pleadings, Defendant contends that it never received a copy of the scheduling order.

On July 2, 1987, the Court held a hearing on Plaintiff's Motion for Entry of Default Judgment. At that hearing, Plaintiff presented to the Court copies of her hospital and medical bills, totaling $11,794.00. Ms. Hughes also testified that she lost approximately $15,000.00 in lost wages and had damages of $25,000.00 for mental anguish. She stated that she also had pain and suffering in the amount of $75,000.00. She requested a total judgment of $126,794.00. At the conclusion of the hearing, the Court indicated that it was satisfied with the proofs of damages.

Accordingly, on August 18, 1987, Judge Pratt entered a Default Judgment in the amount of $126,797.00[2] in favor of the

---

**2.** There is no explanation in the text of the Judgment for the three ($3.00) dollar discrepancy between the proofs at the hearing and the Court's judgment.

Plaintiff. The Judgment captions the case as *Muriel Hughes, Plaintiff, v. Cabanas del Caribe Hotel, "Cozumel Caribe Hotel", Defendants*. The body of the Judgment refers to "defendant" in the singular, but uses both names. According to the deputy clerk's endorsement on the Judgment, copies were mailed to all parties of record. Again, Defendant claims that it has no record of ever having received a copy of the Default Judgment.

### D. *Defendant's Discovery of the Default Judgment.*

According Fernando Hereida, the manager of Cabanas del Caribe Hotel, neither the owners nor the management of the Hotel was aware of any default judgment, or any actual or attempted collection activity from August, 1987 until February, 1990.

In February, 1990, the Hotel first became aware of the case and the default judgment when writs of garnishment were issued and served upon three (3) travel agencies—Hollywood Travel, Inc.; Wyder Tours, Inc.; and Caribbean Carnival Travel—in the Southern District of Florida. The Hotel then retained counsel who reviewed the docket entries in the file and the transcript of the July 22, 1987 hearing on Plaintiff's Motion for Entry of Default Judgment. Upon receipt and review of that transcript and other documents in the Court file of the case, the Hotel filed this motion.

### E. *Plaintiff's Alleged Basis for Personal Jurisdiction of This Court and Defendant's Contrary Arguments.*

As explained above, in her original Complaint, and as reiterated in her First Amended Complaint, Plaintiff alleged that the Hotel did business in this district by virtue of its placing advertising through Thompson Vacations, Inc., in Detroit. Further Ms. Hughes alleged that the Automobile Club of Michigan was the "Hotel's agent" through whom Ms. Hughes made her room reservations, and to whom she paid a deposit in Detroit. [Complaint para. 5]

Defendant contends in the instant motion that these jurisdictional allegations are not true and that there is, in fact, no basis for this Court to have asserted personal jurisdiction over Cabanas del Caribe Hotel.

Defendant relies upon the following "actual facts" gleaned from the Affidavit of Mr. Hereida and the additional testimony of witnesses at the July 17, 1990 hearing in support of its lack of personal jurisdiction argument:

Cabanas del Caribe Hotel offered rooms for block reservations to various tour organizations in the United States. One such tour organization with which Cabanas del Caribe Hotel had such an agreement was Thompson Vacations, Inc. Thompson Vacations, Inc. ("Thompson") is an Illinois corporation, now known as Apple Vacations, Inc. headquartered in Elk Grove Village, Illinois. The Hotel provided Thompson with its schedules of winter and summer room rates and some pictures of its rooms, common areas, pools and beaches. Thompson in turn offered package rental arrangements, including or excluding air fare, on its own account through various independently owned and operated travel agencies. One such agency that Thompson dealt with was the Automobile Club of Michigan ("AAA"). Cabanas del Caribe Hotel never engaged AAA to secure reservations for itself from Michigan residents.

When a AAA customer booked reservations being handled by Thompson, the customer paid AAA—not Thompson and not the Hotel. AAA deposited the customer's money in its own account. AAA would keep a percentage (for its service fee) and would pay the balance to Thompson. Thompson, in turn, would make all of the arrangements with and pay the Hotel.

While the Hotel provided Thompson with photographs and written descriptions of its rooms, common areas, swimming pools and beaches, it neither directed nor controlled Thompson's or AAA's use of any advertising using those photos or documents. Nor did it provide advertising copy to be used in promoting the Hotel.

At no time did the Hotel ever own property, have an office, employee, or any other presence in the State of Michigan.

It is Defendant's position that the foregoing facts demonstrate a lack of sufficient contacts with the State of Michigan for this Court to have asserted personal jurisdiction over it.

F. *Defendant's Alternate Argument that Plaintiff Sued, and Obtained a Judgment Against, the Wrong Hotel.*

Defendant argues in the alternative that even if the Court finds that Cabanas del Caribe Hotel had sufficient contacts with the State of Michigan such that this Court had personal jurisdiction over it when it entered the Default Judgment against it, the Judgment should, nonetheless, be set aside because Plaintiff sued the wrong hotel. It is Defendant's contention that, in all likelihood, Plaintiff's injuries occurred, if at all, not at the Cabanas del Caribe Hotel, but rather at the Cozumel Caribe Hotel. In support of this alternate argument, Defendant relies on the following facts:

The Cabanas del Caribe Hotel is a separate hotel independently owned and operated from a hotel *two* doors down the street that is known as the "Cozumel Caribe Hotel." The Cabanas del Caribe Hotel has never been "formerly known as the Cozumel Caribe Hotel".

Defendant Cabanas del Caribe Hotel contends that it has no record of Ms. Hughes having ever stayed there. Ms. Hughes testified at the July 17, 1990 hearing that she has no independent recollection of the name of the hotel where she stayed in Cozumel. She also was unable to produce any independent corroborating evidence (vouchers, phone bills, statements, receipts, credit card slips, etc.) that she stayed at Cabanas del Caribe. At that hearing, she submitted a picture of a hotel which appeared in the Thompson brochure and testified that the picture was of the hotel in Cozumel where she stayed and was injured. Ms. Hughes also produced personal photographs from her Mexican vacation, several of which, she testified were taken at the hotel where she stayed and was injured. Mr. Hereida testified that these photos were definitely pictures of the Cozumel Caribe Hotel, *not* Defendant Cabanas del Caribe Hotel.

On the other hand, the witness from Thompson Vacations testified that, in 1983, Thompson had no relationship with the Cozumel Caribe Hotel; it only had an arrangement with Defendant Cabanas del Caribe Hotel. She did state that it is possible that if there was an "overflow" of reservations booked at the Cabanas del Caribe, Plaintiff could have been given a room at the Cozumel Caribe Hotel, instead, but Mr. Hereida stated that he did not know if that ever, in fact, happened.

## II. DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure, provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(4) *The judgment is void;* .... or

(6) *Any other reason justifying relief from operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. *This rule does not limit the power of a court* to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified, as provided in Title 28, U.S.C. Sec. 1655, or *to set aside a judgment for fraud upon the court.*

Further, Fed.R.Civ.Pro. 55(c) provides:

For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Defendant advances three alternate arguments as to why it should be relieved from the August 1987 Default Judgment entered against it in this case. Defendant's argument may be capsulized as follows:

(1) Plaintiff sued (and obtained judgment against) the wrong Hotel;

(2) The judgment is void because of the Court's lack of personal jurisdiction over Defendant Cabanas del Caribe Hotel; and/or

(3) Service of the Summons and Complaint, although concededly in compliance with Fed.R.Civ.Pro. 4(i),[3] was "unsatisfactory" because delivery was not restricted to an officer or managing agent of the Hotel.

## (1) IDENTITY OF THE HOTEL

■ The Court is not persuaded by Defendant's argument that the Default Judgment should vacated because Plaintiff sued the wrong hotel. Although Defendant Cabanas del Caribe Hotel has no record that Plaintiff ever stayed there,[4] and Plaintiff has no independent recollection regarding the name of the hotel where she was staying when she was injured, the testimony of the agent from Thompson Vacations was that it had no relationship with the Cozumel Caribe Hotel (the suggested other hotel where Plaintiff may have stayed) and Mr. Hereida testified that he had no evidence to support a finding that Plaintiff was the victim of an "over-booking" of rooms at the Cabanas del Caribe that could have resulted in her having stayed at the Cozumel Caribe Hotel instead of at the Cabanas del Caribe.

In short, the evidence on this point goes both ways, and the Court is unable to make a determinative factual finding that Plaintiff was not staying in a room at the Cabanas del Caribe Hotel when she was injured sufficient to establish a "reason justifying relief from operation of the judgment", or that Plaintiff's having obtained the Judgment against Cabanas Del Caribe Hotel constituted a "fraud upon the court", within the parameters of Fed.R.Civ.Pro. 60(b)(6).

## (2) SERVICE OF PROCESS UPON DEFENDANT

■ The Court is likewise not persuaded by Defendant's argument that the Judgment should be vacated because service of process was "unsatisfactory". As noted above, Fed.R.Civ.Pro. 4(i)(1)(D) provides for service upon a party in a foreign country by

"... any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served."

In this case, the court clerk did just that. The rule does not require restricted delivery. Defendant does not dispute that the address to which the clerk sent the Summons and Complaint (as evidenced by the registered mail return receipt) was the wrong address. Defendant's argument is based solely on the fact that a bell boy allegedly signed for the registered mail. The bell boy allegedly "could neither speak nor write English" and his normal duties did not include receiving the mail. Whether or not the Defendant allows bell boys to review and dispose of its mail, and whether or not that is what happened in this case, is of little, if any, import as far as the propriety of service of process is concerned. Service was effected in accordance with the Rules of Civil Procedure. Indeed, Defendant has not shown otherwise.

In effect, Defendant's argument of "unsatisfactory" service is based solely on its own internal hotel administrative procedures—not on any improper conduct on the part of the Plaintiff—and thus, this Court

---

**3.** Rule 4(i)(1) provides for service upon a nonresident defendant:

(D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the Clerk of the Court to the party to be served. Rule 4(i)(2) further provides:

When service is made pursuant to subparagraph (1)(D) of this subdivision, proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court.

**4.** The records from the pertinent time period apparently were destroyed in Hurricane Hugo.

finds that Defendant's "unsatisfactory" service argument without merit.

## (3) PERSONAL JURISDICTION

The Court, *is*, however, in agreement with Defendant on the issue of lack of personal jurisdiction.

■ It is well-established that a judgment entered without personal jurisdiction over the parties is void. *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1255 (9th Cir.1980); *Marshall v. Board of Education*, 575 F.2d 417, 411 (3rd Cir.1978); *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir.1969); *V.T.A., Inc., v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979). A void judgment is a legal nullity and court considering a motion to vacate has *no discretion* in determining whether it should be set aside. *Jordon v. Gilligan*, 500 F.2d 701, 704 (6th Cir.1974); *Thos. P. Gonzalez Corp., v. Consejo Nacional, supra*, 614 F.2d at 1256. ("There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4) … Either a judgment is void or its valid. Determining which may well present a difficult question, but when that question is resolved the court must act accordingly.")

Defendant contends that it lacked sufficient contacts with Michigan for this Court to exercise personal jurisdiction over it consistent with due process. Plaintiff responds that the Court has *in personam* jurisdiction over Defendant pursuant to subsection (1) of the Michigan Long–Arm Statute, M.C.L. 600.715(1),[5] and that the assertion of jurisdiction over this Defendant is consistent with due process.[6] The standards applicable to the resolution of these issues have been thoroughly addressed by the Sixth Circuit.

■ The actual starting point, however, is the rule enunciated by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *International Shoe* provides that when state long-arm jurisdiction is the alleged basis for the assertion of jurisdiction over a non-resident, due process is satisfied if the defendant has "sufficient contacts or ties with the state of the forum to make it reasonable and just" to require the non-resident to come in and defend. Although the *International Shoe* standard sets liberal boundaries for state long-arm jurisdiction under federal due process, due process does not compel states to reach the limits of those boundaries. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The Sixth Circuit has expressly recognized that Michigan is one state that has elected to "stop short" of the outermost boundaries and has held that the duty of the federal courts

is to stop where the Michigan courts have drawn the line and not push jurisdiction to the limits of due process allowed by *International Shoe.…*

---

**5.** Section 600.715 provides as follows:
Corporations; limited personal jurisdiction
The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts or record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
(1) The transaction of any business with in the state.
(2) The doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort.
(3) The ownership, use, or possession of any real or tangible personal property situated in the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

**6.** The dispute here concerns whether the Court has "limited" personal jurisdiction under the long-arm statute. Neither party appears to argue that Defendant's contacts with Michigan are sufficiently "continuous and systematic" so as to support "general" jurisdiction under M.C.L. 600.711, and the Court finds, as a preliminary matter that such continuous and systematic contacts are, in any event, completely lacking. *See, Michigan National Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 464, 466 (6th Cir.1989).

[S]tate law determines whether a [defendant] is subject to suit in the state, and the federal decisions are important only in ascertaining whether the state law is within constitutional bounds.

*Rann v. McInnis*, 789 F.2d 374, 377 (6th Cir.1986).

The Sixth Circuit has identified three criteria that must *all* be met before a court can constitutionally assert jurisdiction over an out-of-state defendant pursuant to its long-arm statute:

First, the defendant *must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.* Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir.1989), *cert. den.*, —— U.S. ——, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990). [Emphasis added.]

█ The Court, finds that not even the first criterion, "purposeful availment", is satisfied in this case.

The Michigan Supreme Court recently was called upon to determine specifically whether the "purposeful availment" element was satisfied in *Witbeck v. Bill Cody's Ranch Inn*, 428 Mich. 659, 411 N.W.2d 439 (1987) a case that is strikingly similar in its factual record to the instant case. *Witbeck* was a personal injury action. The plaintiff in that case was injured when she fell off a horse she was riding while on vacation with her family at a dude ranch located in Wyoming. The Witbecks had decided to vacation at the ranch following a visit to the Birmingham, Michigan, office of the American Automobile Association ("AAA"). An agent of the AAA recommended the ranch to the Witbecks after reviewing with them a regional tour book covering western states published by the AAA. The tour book included an advertisement for the ranch and identified the ranch as a participant in the AAA's "official appointment service" with a four-diamond rating. Thereafter, the Witbecks placed a phone call from Michigan to the ranch to make inquiries and arrangements for their stay. The ranch followed up by sending them a brochure. There was no other contact between the ranch and the Witbecks until they arrived at the defendant's Wyoming establishment.

The defendant moved for accelerated judgment in the circuit court claiming a lack of personal jurisdiction; the motion was denied and the Court of Appeals affirmed. The Michigan Supreme Court reversed, finding that exercise of long-arm jurisdiction over the Wyoming dude ranch on the basis of the above facts would violate the Fourteenth Amendment of the U.S. Constitution.

Noting that the focus of due process analysis is primarily on the defendant, rather than on the plaintiff, the Court explained, "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," 411 N.W.2d at 444, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original).

Applying the foregoing standards in the *Witbeck* case, the Michigan Supreme Court held that the defendant's advertisement in the AAA tour guide did not establish a "substantial connection" with Michigan, explaining:

It is clear that a single advertisement in a national publication does not, by itself constitute "purposeful availment" of the forum state. [Citations omitted.] If the rule were otherwise, each advertiser in any nationally distributed publication would be subject automatically to the jurisdiction of each of the states in which the publication is distributed. [Citations omitted.]

Rather, "the court must look to the quality of contacts which follow from the advertisement." *American Business*

*Overseas v. Methods Research Products,* 593 F.Supp. 1, 4 (W.D.Mich.1983).

*Id.* 411 N.W.2d at 445. [Emphasis added.]

The *Witbeck* court then examined the following post-AAA-advertisement "contacts" upon which the plaintiff based her allegations of personal jurisdiction. The court noted:

1. There were no extensive negotiations between the parties in Michigan which followed the placement of the ad in the AAA tour guide.

2. Plaintiff's family made only a single telephone call from Michigan to Wyoming and spoke with one ranch employee.

3. During that telephone conversation, the Witbecks learned that they would be entitled to a "package rate" and that they would not have to send in a deposit to guarantee their reservations.

4. The ranch did not negotiate for services to be performed. After the phone call the ranch sent the Witbeck's a descriptive brochure.

5. Importantly, *the decision to advertise in the AAA tour book was not a decision under defendant's exclusive control;* it was something collectively decided, and, in fact, more within the discretion of AAA.

These facts led the *Witbeck* court to conclude that the advertisement in the AAA book, the phone call and the mailing of a descriptive brochure did not satisfy the "minimum contacts"/"purposeful availment" test/"substantial connection" test: "[I]t cannot be said that [separately or collectively these contacts] established a 'substantial connection' with Michigan; *quite the contrary, its effect was to cause Michigan residents to leave the state and to go to Wyoming." Id.* at 446.

Just as in *Witbeck,* the Plaintiff here made her travel arrangements through AAA, supposedly based upon an advertisement she had seen earlier. However, the "contacts" between the Plaintiff and Defendant here are even more tenuous than those in *Witbeck.* Here, there were *no* direct contacts whatsoever between the parties prior to Plaintiff's arrival in Mexico (i.e., no phone calls, no direct mailings.)

The Court notes that in two 1989 cases, two judges of this district were satisfied that they had personal jurisdiction over the defendants based upon "contacts" similar to those in this case. However, in *Catalano v. BRI, Inc.,* 724 F.Supp. 1580 (E.D. Mich.1989), the Court did not discuss or even mention the Michigan Supreme Court's decision in *Witbeck.* Even so, the "contacts" of the defendant in *Catalano* with Michigan are readily distinguishable from the tenuous Michigan contacts of the Defendant in this case. In *Catalano,* the defendant had a Michigan agent with whom the plaintiff dealt. In this case, Defendant's contacts with Michigan were "twice removed"—it was only by way of having offered rooms for block reservation to Thompson Vacations, an Illinois entity which, in turn, offered package rentals to AAA of Michigan that Defendant had any contact with this state.

*Wronikowski v. General Hotels Corp.,* 716 F.Supp. 5 (E.D.Mich.1989), is likewise distinguishable. In that case, the plaintiff slipped and fell in the bathroom of her Holiday Inn hotel room in Indiana where she was staying during the annual convention of the Midwest Association of Housing Cooperatives (Midwest), which was being held at that Holiday Inn. The court denied the defendant's motion to dismiss for lack of personal jurisdiction based upon the following findings:

Defendant operates a franchise of Holiday Inn, Inc. (Holiday Inn), a worldwide chain of hotels. Holiday Inn operates a centralized toll-free reservations network which books reservations for travelers at the hotels of its franchisees. Holiday Inn creates good will for its franchisees by advertising on a national basis. There is a substantial number of Holiday Inn hotels in Michigan.

Plaintiff's reservations were booked by Midwest. No doubt, Midwest was partly induced to book defendant's hotel because of the good will generated by Holiday Inn. Midwest either booked the defendant's hotel directly or by communica-

tion through Holiday Inn. In the usual course of events, large conventions area booked only after extensive negotiations between the hotel and the convention organizers. It appears that Midwest's territory consists of Michigan, Illinois, Kentucky, Ohio and Indian. Defendant knew or should have known that Michigan residents would be in attendance. Under these circumstances, I find that defendant transacted business in Michigan within the meaning of M.C.L.A. 600.-715(1), Michigan long-arm statute.

*Id.* at 6.

Moreover, the *Wronikowski* court, expressly distinguished that case from the *Witbeck* case because the hotel in that case, like the hotel in this case, was not affiliated with a national chain of hotels.[7]

Plaintiff, here, also contends that Judge Suhrheinrich had told the parties at a status conference earlier this year that he believed that this Court had personal jurisdiction over the Defendant under *Lanier v. American Board of Endodontics*, 843 F.2d 901 (6th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). If he did, this Court disagrees. In fact, the Sixth Circuit explicitly narrowly interpreted *Lanier* last fall in *LAK, Inc. v. Deer Creek Enterprises, supra*, explaining that the court found personal jurisdiction in that case because the defendant licensing board in *Lanier* sought to extend its influence and prestige in Michigan as the principal national determiner of competence for the practice of endodontics. "Thus, the real object of the [Lanier] Board's contacts with Michigan [was] to have *ongoing, far-reaching consequences in the Michigan dental services market. These consequences are continuous and substantial....*" 885 F.2d at 1303.

Therefore, this Court rejects Plaintiff's contention that *Lanier* stands for the proposition that all that is needed to establish personal jurisdiction is that the defendant have "conducted even the slightest act of business in Michigan."

Although it is not necessary to decide these issues, the Court also finds that the second and third criteria required for this Court to assert personal jurisdiction over Defendant Cabanas del Caribe Hotel are not satisfied, either. The second criterion requires that the Plaintiff demonstrate that her causes of action "arose out of" the Hotel's activities in Michigan. *Deer Creek Enterprises, supra.* Accepting Plaintiff's Complaint allegations as true, her injuries arose from the negligent conduct *in Mexico* of the Hotel maintenance staff in failing to repair a broken light bulb and a leaky shower door. The Court fails to comprehend how Plaintiff can possibly contend that her claim arose out of the hotel's attenuated Michigan activities.

As a third criterion, the Court must find that the acts of Cabanas del Caribe Hotel have a substantial enough connection with the Eastern District of Michigan to make the exercise of jurisdiction over the hotel reasonable. *Deer Creek Enterprises, supra.* As explained above, the Court finds that the Michigan contacts of Cabanas del Caribe Hotel are no more than "random, fortuitous and attenuated" contacts, *Burger King v. Rudzewicz, supra*, and, thus, not substantial enough to make the exercise of jurisdiction over the hotel reasonable.

### III. CONCLUSION

For the foregoing reasons, the Court finds that there are not sufficient contacts between Defendant Cabanas del Caribe Hotel and the Eastern District of Michigan to enable this Court to constitutionally exercise personal jurisdiction over the Defendant. As a result, this Court finds that the default judgment entered by the Court in

---

**7.** Judge Feikens also stated in *Wronikowski* that he did not have to follow *Witbeck* because that case "rested on the due process clauses of the Constitution, not upon interpretation of Michigan's long-arm statute" and that "[t]o the extent that *Witbeck* cannot be distinguished from this case, I decline to follow it." This Court notes that inasmuch as *Witbeck* reflects the Michigan Supreme Court's interpretation and application of its state's own long-arm statute, this Court is required to follow it. *See, Perkins v. Benguet Consolidated Mining Co., supra; Rann v. McInnis, supra.*

1987 is void and, therefore, must be vacated.

Therefore, IT IS HEREBY ORDERED that Defendant's Motion for Relief from Judgment be and hereby is GRANTED Accordingly, this case is hereby DISMISSED for lack of personal jurisdiction. The Court's dismissal of the case also MOOTS Defendant's Motion for Stay of Judgment.

Judgment will be entered accordingly.