Myran **DENHAM** and Kathy Denham, Plaintiffs,

v.

**SAMPSON INVESTMENTS** d/b/a Grand Milwaukee Hotel and Shady Grove Road Associates, L.L.C., Defendants.

No. Civ.A. 97–40399.

United States District Court,
E.D. Michigan,
Southern Division.

March 4, 1998.

Christopher J. Trainor, Trainor & McCarty, Detroit, MI, for Plaintiffs.

Charles W. Browning, Detroit, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

GADOLA, District Judge.

On or about September 29, 1997, plaintiffs, Myran Denham and Kathy Denham, filed this tort action alleging that defendants, Sampson Investments d/b/a Grand Milwaukee Hotel and Shady Grove Associates, L.L.C., were negligent in maintaining and operating a swimming pool at the Grand Milwaukee Hotel in Milwaukee, Wisconsin and that such negligence caused Myran Denham to suffer serious and permanent injuries to his eyes. On November 24, 1997 defendants filed the instant motion to dismiss for lack of personal jurisdiction. For the following reasons, the motion will be granted.[1]

1. Pursuant to Local Rule 7.1(e)(2), this court has decided to dispense with oral argument and decide the matter based upon the parties' written submissions.

2. Allegedly, the Hotel was selected for the site of the convention by the AA Bid Committee. The

### FACTS

For purposes of this motion, the facts will be construed in a light most favorable to the plaintiffs. On September 30, 1996, plaintiff Myran Denham was a guest of the Grand Milwaukee Hotel ("Hotel") in Milwaukee, Wisconsin. The Hotel was then-owned by defendant Sampson Investments, a Wisconsin general partnership with its principal place of business in Milwaukee, Wisconsin. Shady Grove, a limited liability company organized under the laws of Delaware with its principal place of business in San Francisco, California, is the current owner of the Hotel.

While a guest of the Hotel, Myran Denham injured his eyes as a result of exposure to unknown chemicals in the water of the Hotel's pool. Myran Denham was initially treated in Milwaukee, Wisconsin for his injuries. He subsequently has received treatment by a number of doctors in Michigan.

Myran Denham was attending an Alcoholics Anonymous ("AA") convention at the Hotel during the relevant time period. Prior to the convention, Myran Denham received an information packet from the General Service Office of AA based in New York City. The information packet contained a brochure advertising the Hotel's facilities as well as a Hotel "Reservation Card."[2] After receiving the packet, plaintiff completed the Reservation Card and forwarded it, along with a deposit, directly to the Hotel per the instruction on the Reservation Card.

### ANALYSIS

Myran Denham, along with his wife Kathy Denham, instituted this lawsuit against defendants claiming that defendants were negligent in maintaining and operating the swimming pool. Defendants move to dismiss this action on the grounds of lack of personal jurisdiction.[3]

Hotel allegedly set aside 150–200 rooms for the AA convention.

3. This court will use the term "Hotel" and "defendants" interchangeably.

Plaintiffs bear the burden of establishing personal jurisdiction. *Mozdy v. Lopez,* 197 Mich.App. 356, 359, 494 N.W.2d 866 (1992). Plaintiffs need only make a *prima facie* showing of jurisdiction. *Jeffrey v. Rapid American Corp.,* 448 Mich. 178, 184, 529 N.W.2d 644, *lv. app. denied,* 448 Mich. 938, 534 N.W.2d 524 (1995). Specifically, in order to establish personal jurisdiction in this case, where subject-matter jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332, plaintiffs must show: (1) a Michigan long-arm statute provides a basis for the court to exercise personal jurisdiction over the defendants and (2) the exercise of jurisdiction over the defendants would not offend the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America. *See e.g., National Ass'n. of Credit Management v. Hubbard Lumber,* 831 F.Supp. 588. 590 (W.D.Mich.1993) (holding that in a diversity action, a federal court must apply the law of the state in which the court sits in order to assess whether it has personal jurisdiction over the parties) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

For the reasons stated *infra,* this court finds that the exercise of *in personam* jurisdiction over the defendants would violate the Fourteenth Amendment. Because of this court's finding as to the constitutional issue, this court need not reach the issue of whether a Michigan long-arm statute provides a basis for personal jurisdiction over the nonresident defendants here.

In the landmark case of *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that due process is satisfied if the defendant has "sufficient minimum contacts" or ties with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (*in personam* jurisdiction exists "where the contacts proximately result from

actions by the defendant himself that create a 'substantial connection' with the forum state"). "[T]he facts of each case must be weighed in determining whether personal jurisdiction" exits. *Burger King,* 471 U.S. at 485. "Defendant's conduct and connection with the forum [s]tate [must be] such that [it] should reasonably anticipate being haled into [c]ourt there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). It is beyond peradventure that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Indeed, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* In other words, a defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

Consistent with *International Shoe* and its progeny, the Sixth Circuit has developed three criteria (hereinafter the *"Mohasco* criteria") for use in evaluating whether specific (a.k.a. limited) *in personam* jurisdiction constitutionally can be exercised over any particular defendant.[4]

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

4. Plaintiffs do not seem to be alleging that there is "general" *in personam* jurisdiction over defendants, nor does this court find that Michigan can exercise such jurisdiction over defendants. In order for Michigan to exercise general *in person-* *am* jurisdiction over defendants, defendants would have to have conducted "continuous and systematic" business activity in Michigan and there is no evidence that they have done so.

LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1299 (6th Cir.1989), cert. denied, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990) (citing Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968)).

### Purposeful Availment

■ In the case sub judice, plaintiffs have not made a prima facie showing of the first of the three Mohasco criteria, to wit: that defendants "purposefully availed" themselves of the privilege of acting in Michigan or causing a consequence in Michigan. As described by the Michigan Supreme Court in Witbeck v. Bill Cody's Ranch Inn, 428 Mich. 659, 667–668, 411 N.W.2d 439 (1987):

A purposeful availment is something akin either to deliberate undertaking to do or cause an act to be done in Michigan or conduct which can be properly regarded as a primate generating cause of the effects resulting in Michigan, something more than passive availment of Michigan opportunities. The defendant will have reason to forsee being "haled before" a Michigan court.

(quoting Khalaf v. Bankers & Shippers Ins. Co., 404 Mich. 134, 153–54, 273 N.W.2d 811 (1978)).

■ Plaintiff insists that defendants purposefully availed themselves of the forum state because: (1) the Grand Milwaukee Hotel sent brochures to AA's General Service Office in New York City which in turn sent the same to plaintiff, Myran Denham, in Michigan with a Reservation Card, and because (2) the Grand Milwaukee Hotel reserved a block of 150–200 rooms for out-of-state attendees of the AA convention and plaintiff, Myran Denham, and other residents of Michigan reserved rooms at the Hotel by mailing Reservation Cards to the Hotel. These two contacts viewed separately or taken together do not establish any purposeful availment on the part of the defendants in Michigan. Indeed, these contacts are entirely too thin to constitute the requisite "minimum contacts" required by the Due Process Clause.

Certainly, the defendants did not purposefully avail themselves of the privilege of acting in Michigan or causing a consequence in Michigan when they provided AA's office in New York with brochures and or Reservation Cards. See e.g., Witbeck v. Bill Cody's Ranch Inn, 428 Mich. 659, 671, 411 N.W.2d 439 (1987) ("It is clear that a single advertisement in a national publication does not, by itself, constitute 'purposeful availment' of the forum state.") (citing Bolger v. Dial–A–Style, 159 Colo. 44, 409 P.2d 517 (1966); Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4th Cir.1956)). Furthermore, when defendants reserved a block of rooms for out-of-state attendees of the AA convention, this did not amount to purposeful availment on the part of the defendants in Michigan. Certainly, reserving a room for an out-of-state guest is not an action sufficient to subject the Hotel to personal jurisdiction in the location in which that guest resides. Otherwise, personal jurisdiction could be based on the residence of a plaintiff in any lawsuit brought by a hotel guest who had reserved a room prior to his or her hotel visit. Yet, jurisdiction over a defendant can never be based on a plaintiff's residence. To the contrary, it is the defendant's contacts with the forum state on which the court must focus its attention.

In finding no purposeful availment here, this court is instructed by the case of Witbeck v. Bill Cody's Ranch Inn, 428 Mich. 659, 411 N.W.2d 439 (1987), a case with facts strikingly similar to the facts of the instant case. In Witbeck, plaintiff, Michelle Witbeck, was injured when she fell off of a horse she was riding while vacationing with her family at a dude ranch located in Wyoming. The Witbecks had decided to vacation at the dude ranch after visiting a Birmingham, Michigan office of the Automobile Association of America ("AAA"). The AAA agent reviewed with the Witbecks a regional tour book published by AAA covering the western states, which included an advertisement for the defendant dude ranch. Upon seeing the advertisement for the dude ranch, the Witbecks called the dude ranch from Michigan. The dude ranch followed up the phone call by sending the Witbecks a brochure. From the date the dude ranch sent the brochure until the date the Witbecks arrived at the dude

ranch, there was no contact between the parties.

The court found that the dude ranch was not subject to personal jurisdiction in Michigan. Specifically, the court determined that the dude ranch had not "purposefully availed" itself of the privilege of conducting activities in Michigan or causing a consequence in Michigan. For one, the court concluded that the dude ranch's advertisement in the AAA regional tour guide was not a "substantial connection" with Michigan, especially since the decision to advertise in the AAA tour book was not a decision under the dude ranch's exclusive control but rather was a decision made, in part, by AAA. *Id.* at 671, 411 N.W.2d 439. Second, the court decided that the phone call made by the Witbecks to the dude ranch after seeing the advertisement in the tour book was not a "substantial connection" with Michigan. *Id.* at 672, 411 N.W.2d 439. The effect of the phone call "was to cause Michigan residents to leave the state and go to Wyoming." *Id.* Third, the court determined that when the dude ranch forwarded its brochure to the Witbecks in Michigan it was not "purposefully availing" itself of the benefits and privileges of Michigan. *Id.* at 673, 411 N.W.2d 439. The court recognized that there are "limits to a state's power to exercise personal jurisdiction over a nonresident defendant," this being one such limit. *Id.* at 673–74, 411 N.W.2d 439. Fourth and finally, the court pointed out that militating against a finding of personal jurisdiction were the following: the accident did not occur in Michigan, and the residence and business activities of the defendant were con-

fined to Wyoming. *Id.* at 670, 411 N.W.2d 439.

The facts of *Witbeck* are analogous to the facts of the case at bar. First, like the defendant in *Witbeck,* the defendants in this case are not incorporated in the forum state (i.e., Michigan) and they have no offices or facilities in the forum state.[5] Second, just as the defendant in *Witbeck* did not have employees and did not engage in any special marketing activities in the forum state of Michigan, the defendants in this case do not have employees in the forum state of Michigan, and do not engage in any special advertising directed solely to Michigan. Third, this case resembles *Witbeck* in that both cases involved an insignificant amount of contact between the parties prior to the plaintiffs' stays at the defendants' facilities.[6] Finally, like the case of *Witbeck,* in which the dude ranch did not have exclusive control over AAA's decision to advertise it in its tour book, the Hotel in the instant case did not have exclusive control over where AA would send the Hotel's brochures and Reservation Cards.[7] For all these reasons, just as the court in *Witbeck* decided that Michigan lacked personal jurisdiction over the dude ranch, this court concludes that Michigan lacks personal jurisdiction over the defendants in the case at bar.

Plaintiff argues that the instant case is "eerily similar" to *Catalano v. BRI Inc.,* 724 F.Supp. 1580 (E.D.Mich.1989), a case in which the court found that the defendant had sufficient minimum contacts in Michigan to be subject to personal jurisdiction there.

---

5. Based on the uncontroverted affidavits of Scott A. Sampson, Managing Partner of Sampson Investments, and Elizabeth Erickson, Principal Counsel of Shady Grove Road Associates, L.L.C., neither of the two defendants were formed under the State of Michigan, has its principal place of business in Michigan, transacts or has transacted business in Michigan, is registered or qualified to do business in Michigan, regularly engages in the solicitation of business in Michigan, maintains or has maintained a telephone listing in Michigan, owns or has owned real or personal property in the state of Michigan or is or was a party to any litigation in Michigan.

6. In *Witbeck,* the Witbecks had called the dude ranch and the dude ranch had forwarded the

Witbecks a brochure. In this case, the only contact prior to plaintiff's stay at the Hotel was his sending the Reservation Card from Michigan to the Hotel in Wisconsin. This activity by plaintiff in Michigan (i.e., mailing the Reservation Card) does not constitute "purposeful availment" on the part of the defendants in Michigan.

7. While is was foreseeable that AA would mail a brochure and Reservation Card to Michigan, this court finds that this foreseeability is not a sufficient reason to find that Michigan has personal jurisdiction over the defendants here. It was *not* foreseeable to the Hotel that it would be subject to personal jurisdiction in Michigan simply because AA could possibly be sending a brochure and Reservation Card to a Michigan resident.

This court finds *Catalano* highly distinguishable from the instant case.

In *Catalano,* plaintiff purchased from the defendant, American Airlines Tours, a travel package to Las Vegas, Nevada. The package included hotel and air accommodations as well as a rental car. American Airlines Tours originally promised a room at the Tropicana Hotel, but plaintiffs subsequently learned that there was no vacancy at that Hotel. Plaintiffs stayed instead at the El Rancho. While lying in the bathtub at the El Rancho, plaintiff was injured when the ceiling plaster collapsed. Plaintiff sued the Hotel and American Airlines Tours for his injuries.

El Rancho moved to dismiss the plaintiff's claims contending that Michigan lacked personal jurisdiction over it. The court found that El Rancho had purposefully availed itself of the benefits and privileges of Michigan by retaining, as its agent, American Airlines Tours, an entity which maintained sales offices in Michigan and which was authorized to sell rooms to people in Michigan.

The facts of *Catalano* are very different from the facts of the instant case. Here, plaintiffs have presented no evidence that the General Service Office of AA in New York is an agent for the Grand Milwaukee Hotel. Moreover, assuming that plaintiffs had presented such evidence, it would provide a basis for *New York* to exercise jurisdiction over the defendants, not *Michigan.*[8]

### Whether The Facts Arise Out of Conduct which Occurred in Michigan

■ Not only is the first *Mohasco* criterion lacking, but so is the second *Mohasco* criterion. That is to say, plaintiffs have not made a *prima facie* showing that the facts of this lawsuit arise out of conduct which occurred in Michigan. Indeed, it seems to this court as though the facts involved in this dispute arise out of activities which occurred exclusively in Wisconsin where the Hotel pool was maintained. This court rejects plaintiff's argument that the facts arise out of activities which occur in Michigan since Michigan is the place in which plaintiff Myran Denham booked the reservation.

### Reasonableness

■ The third *Mohasco* criterion is also lacking. Allowing Michigan courts to exercise personal jurisdiction over defendants in this case would be unreasonable. All the alleged Michigan "contacts" were either initiated by plaintiff, Myran Denham, or AA. None of the defendants are alleged to have initiated contact in Michigan. As such, it would be unreasonable to find that Michigan has personal jurisdiction over the defendants in this action.

In sum, plaintiffs have failed to satisfy their burden that either Sampson or Shady Grove are subject to personal jurisdiction in this state. Accordingly, this court will dismiss this case.

### ORDER

**IT IS HEREBY ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED.**

**SO ORDERED.**

### JUDGMENT

It is hereby **ORDERED** and **ADJUDGED** that the above-titled action is dismissed for lack of personal jurisdiction.

---

8. Moreover, this court finds the case *sub judice* similar to *Hughes v. Cabanas del Caribe Hotel,* 744 F.Supp. 788 (E.D.Mich.1990), *aff'd.,* 947 F.2d 945 (1991). In *Hughes,* the defendants offered rooms to an Illinois corporation, which in turn offered packages to a Michigan corporation. The court found that defendants contacts with Michigan were twice removed and thus not sufficient to provide Michigan with personal jurisdiction over defendants. Here, defendants offered rooms for block reservations to Alcoholics Anonymous in New York, which in turn offered a Reservation Card to plaintiff in Michigan. Like *Hughes,* the defendants contacts with Michigan were twice removed and are not sufficient to provide Michigan with personal jurisdiction over defendants.